# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**Kim Crafton,**                        )
                                        )
    **Plaintiff,**    )
                                        )
       **v.**    )     **Civil No. 14-cv-01505 (APM)**
                                        )
**District of Columbia, *et al*.,**      )
                                        )
    **Defendants.**   )
_____)

## MEMORANDUM OPINION

## I.    INTRODUCTION

Sometimes even conceded wrongs cannot be addressed by the judicial process.  This is such a case.  In February 1994, Plaintiff Kim Crafton was detained for ten months on the charge of felony murder, a crime which she did not commit.  According to Plaintiff, she was arrested and charged because Defendant James Trainum, at the time a detective with the District of Columbia Metropolitan Police Department, obtained a false confession from her using coercive interrogation tactics.  He also suppressed and disregarded evidence demonstrating her innocence.  The charges against Plaintiff ultimately were dismissed without prejudice.

Fast forward 20 years to August 2013.  Defendant Trainum had become a lecturer and teacher on police interrogation tactics and regularly discussed Plaintiff's case in his presentations.  He admitted on a radio program that he had coerced Plaintiff's confession and had disregarded evidence that exculpated her.  Upon learning of Trainum's "confession," Plaintiff filed this suit on September 3, 2014, against Trainum and the District of Columbia, asserting claims under

Section 1983, as well as common law claims of intentional infliction of emotional distress and malicious prosecution.

Defendants have moved to dismiss all claims on the ground that they are barred by the statute of limitations. Plaintiff counters that her claims are timely because she did not "discover" her claims until Trainum's public acknowledgement of his wrongful acts. Notwithstanding that the serious wrongs Plaintiff alleges will go unredressed, the court agrees with Defendants that her claims are barred by the statute of limitations. The court therefore grants Defendants' motion and dismisses Plaintiff's Complaint and this action in its entirety.

## II.   BACKGROUND

### A.   Facts Alleged in the Complaint

#### 1.   *Plaintiff's Wrongful Arrest and Detention*

In 1994, Plaintiff Kim Crafton was living in a homeless shelter in the District of Columbia. Compl., ECF No. 1, ¶ 5. At that time, Defendant James Trainum was a detective with the District of Columbia Metropolitan Police Department ("MPD"), who "was investigating the brutal abduction, robbery, and murder of Lawrence O'Connell[,] whose body was found bound and beaten on the banks of the Anacostia River." *Id.* ¶ 8. Trainum detained Plaintiff based on a tip that she matched a "grainy photograph from an ATM used by the murderer(s) and a composite sketch based on a description by a clerk in a liquor store where the credit card [taken from O'Connell] was used." *Id.* ¶ 9. Trainum proceeded to conduct a "lengthy, grueling" 17-hour videotaped interrogation of Plaintiff during which he used "flawed techniques of interrogation," including sleep deprivation, that "he had been taught by the Metropolitan Police Department, known as 'Reid training.'" *Id.* ¶¶ 9, 12, 14-15. Plaintiff made several incriminating statements during the interrogation and, in the end, confessed to robbing and murdering O'Connell. *Id.* ¶ 16.

2

According to Plaintiff, "Trainum obtained these false, incriminating statements through coercive and unconstitutional tactics, including improper psychological intimidation and pressure and unduly oppressive conditions of confinement such that the resulting statements and confession were neither true nor the product of Plaintiff's free will." *Id.* ¶ 17.  Plaintiff thereafter was arrested, charged with felony murder, and detained pending her trial.  *Id.* ¶ 21.  Several weeks later, she recanted her confession but the charges remained pending.  *Id.* ¶ 22.

According to Plaintiff, Trainum's wrongful conduct persisted after he coerced her to confess.  Trainum "affirmatively endeavored to stretch and manipulate the facts and the evidence to fit the false hypothesis that she was guilty of the crime." *Id.* ¶ 13.  Specifically, Plaintiff alleges that Trainum disregarded and failed to disclose evidence that clearly demonstrated her innocence. *Id.* ¶¶ 18, 20.  For instance, after her recantation, Trainum reviewed the log books at the homeless shelter where Plaintiff had been living and determined that she could not have been at the scene of the murder when the crime occurred.  *Id.* ¶ 23.  Secret Service and FBI handwriting experts concluded that the shelter log books bearing Plaintiff's signature matched her handwriting.  *Id.* ¶ 24.  They also determined that the handwriting on the credit card receipts signed by O'Connell's assailant "unequivocally was *not* that of Plaintiff."  *Id.*  This evidence was not turned over to Plaintiff's counsel.  *Id.* ¶ 25.  Trainum also disregarded other evidence pointing to Plaintiff's innocence.  He ignored contradictory statements made during Plaintiff's interrogation, *id.* ¶ 18, and disregarded Plaintiff's statement that she was seven months pregnant when O'Connell's murder occurred, even though he knew the suspect "in the ATM photo was clearly not pregnant." *Id.*

After Plaintiff spent ten months in jail awaiting trial, the charges against her were dismissed without prejudice for insufficient evidence.  *Id.* ¶ 26.

2.      *Trainum's "Confession"*

Plaintiff alleges that she first learned of Trainum's wrongdoing nearly twenty years later. On August 31, 2013, she received a letter from producers of the radio program "This American Life," who informed her that Trainum was teaching and lecturing on police interrogation tactics and discussing Plaintiff's case in his presentations. *Id.* ¶ 28A.[1]  The show's producers asked to speak with her about her case. *Id.*   Plaintiff agreed, and on September 12, 2013, they played for her an audio recording of an interview during which Trainum "admitted that he had coerced the confession of Plaintiff; had ignored or disregarded exculpatory evidence in his charge towards an arrest and conviction in [Plaintiff's] murder case; and, that Plaintiff was, in fact, innocent." *Id.* ¶ 28B.  Plaintiff asserts that she "had no notice that the false confession she gave in 1994 had been coerced by Trainum's wrongful interrogation and actions until hearing [his] recorded admissions." *Id.* ¶ 29B.

Then, on September 23, 2013, Plaintiff and Trainum participated in a conference call arranged by the show.  On the call, "Trainum repeated his admissions that he had coerced the confession of Plaintiff; had ignored or disregarded exculpatory evidence in his charge towards an arrest and conviction in the murder case; and, that Plaintiff was, in fact, innocent." *Id.* ¶ 29A. He also apologized for his actions. *Id.*

B.      **Procedural History**

Plaintiff filed this action on September 3, 2014, against Defendants District of Columbia and Trainum.  *See* Compl., ECF No. 1.  She asserted five claims.  The first three were brought under 42 U.S.C. § 1983, for violating her right to due process (Count I), for her false imprisonment

---

[1] The Complaint contains two paragraphs numbered 28 and two paragraphs numbered 29.  This opinion refers to the first paragraph of each as "A" and the second as "B."

(Count II), and for coercing her confession (Count III).  The fourth and fifth claims were common law tort claims for malicious prosecution (Count IV)[2] and intentional infliction of emotional distress (Count V).[3]

On December 22, 2014, Defendants District of Columbia and Trainum filed a motion to dismiss, raising four arguments:  (1) the applicable statutes of limitations bar Plaintiff's action in its entirety; (2) Plaintiff's failure to give mandatory notice to the District of Columbia of her common law tort claims under D.C. Code § 12-309 precludes the court from considering them; (3) her Section 1983 claims do not plead facts sufficient to support municipal liability against the District; and (4) her malicious prosecution claim fails to state a claim because the criminal case did not terminate in her favor.  *See* Defs.' Mem. of P&A, ECF No. 8 [hereinafter "Defs.' Mem."].

## III.   LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient *factual matter*, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).  "A claim [is] facially plausible when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (emphasis added) (citing *Twombly*, 550 U.S. at 556).  A complaint that pleads factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief."  *Id.*  (quoting *Twombly*, 550 U.S. at 557) (internal quotation

---

[2] Plaintiff's Complaint mis-numbers her fourth through seventh counts.  The court will refer to those counts as if properly numbered.
[3] Plaintiff also asserted claims for "respondeat superior" (Count VI) and "indemnification" (Count VII). Compl. ¶¶ 71-77.  Neither of these are independent claims, but instead are bases for holding the District of Columbia vicariously liable for Trainum's tortious conduct.

marks omitted).  While the factual allegations need not be "detailed," the Federal Rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

The court must accept as true Plaintiff's factual allegations and "construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citation omitted) (internal quotation marks omitted); *accord Singh v. District of Columbia*, 881 F. Supp. 2d 76, 81 (D.D.C. 2012).  The court should "not accept inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Hettinga*, 677 F.3d at 476 (citation omitted).

## IV.   ANALYSIS

### A.   Section 1983 Claims

The court turns first to Plaintiff's claims arising under Section 1983.  That statute provides a private cause of action against any "person," who, under color of state or District of Columbia law, deprives another individual of a federal constitutional or statutory right.  42 U.S.C. § 1983 (1996).  Here, Plaintiff asserts three predicate constitutional violations in support of her Section 1983 claims: (1) that Defendants withheld exculpatory evidence from her; (2) that Defendants unlawfully obtained a coerced confession from her; and (3) that Defendants subjected her to false imprisonment.  *See* Compl. ¶¶ 41-58.

      1.    *Whether Plaintiff Has Pled a* Brady *Claim*[4]

Plaintiff's first claim, premised on the withholding of exculpatory evidence, Compl. ¶ 41, is in essence a *Brady*-like claim that Defendants violated her Fifth Amendment right to due process.  In *Brady v. Maryland*, the Supreme Court held that a defendant's due process rights are violated when the prosecution suppresses evidence "material either to guilt or to punishment."  373 U.S. 83, 87 (1963).  The government has a constitutional duty, therefore, to disclose exculpatory evidence even if it is not specifically requested by the defense.  *Strickler v. Greene*, 527 U.S. 263, 280 (1999).  And, while the term "'*Brady* violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence[,] . . . strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."  *Id.* at 281.

Here, even assuming the truth of the allegation that Trainum withheld exculpatory evidence from Plaintiff and the prosecutors, Plaintiff has failed to allege an underlying due process *Brady* violation.  "*Brady* addresses the government's duty to provide a criminal defendant with exculpatory material in time for the defense to make use of it *at trial*."  *Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 38 (D.D.C. 2015); *see United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir. 1976) ("Disclosure by the government must be made at such a time as to allow the defense to use the favorable material effectively *in the preparation and presentation of its case*, even if satisfaction of this criterion requires pre-trial disclosure.") (emphasis added).  But, here,

---

[4] Strictly speaking, Defendants have not argued that Plaintiff failed to state a *Brady*-based Section 1983 claim against Trainum.  *See* Defs.' Mem. at 9-10.  Defendants, however, have asserted that Plaintiff failed to sufficiently allege municipal liability for such a claim under *Monell v. N.Y.C. Department of Social Services.*, 436 U.S. 690 (1978).  *See id.*  Because *Monell* requires the court to ask as a first step "whether the complaint states a claim for a predicate constitutional violation," *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003), the court must consider whether Plaintiff has asserted a cognizable Fifth Amendment due process violation based on Trainum's alleged suppression of exculpatory evidence.

Plaintiff never had a trial; the case against her was dismissed. She therefore cannot allege, as all *Brady* claims require, that the wrongful withholding of evidence resulted in prejudice *at trial*. Plaintiff therefore has not asserted a cognizable *Brady* due process violation as a predicate to her first Section 1983 claim.[5]

> 2.  *Whether Plaintiff's Remaining Section 1983 Claims Are Barred by the Statute of Limitations*

Next, the court considers whether Plaintiff's second and third Section 1983 claims are barred by the statute of limitations. In addressing this argument, the court recognizes that granting motions to dismiss based on an expired limitations period is disfavored. *See Richards v. Mileski*, 662 F.2d 65, 73 (D.C. Cir. 1981). "[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). The court applies that standard here.

Although Section 1983 provides a federal cause of action, courts look to state law to determine the appropriate statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The Court of Appeals has determined that Section 1983 claims are subject to the District of Columbia's three-year residual statute of limitations. *Earle v. District of Columbia*, 707 F.3d 299, 305 (D.C. Cir. 2012) (citation omitted). Defendants contend that Plaintiff's Section 1983 claims based on her false imprisonment (Count II) and her coerced confession (Count III) are barred by the statute

---

[5] Even if the court were to construe Plaintiff to have asserted a due process right to *Brady* material well before trial, Plaintiff's claim against Defendants nevertheless would have to be dismissed. As Judge Boasberg recently held in *Kenley*, whether a criminal defendant has a right to *Brady* material long before trial is not well established today, let alone 20 years ago when the conduct at issue in this case occurred. *See Kenley*, 83 F. Supp. 3d at 38-39. Defendant Trainum therefore would be entitled to qualified immunity on Count I. *See id.* As for the District, as in *Kenley*, Plaintiff has not alleged any kind of policy or custom of the MPD that caused the alleged due process violation, as required under *Monell*, 436 U.S. at 694. *See id.* at 40 (dismissing Section 1983 claim against the District where the complaint did "not outline any policy or custom of the MPD to withhold exculpatory evidence" or allege that the District was "deliberately indifferent").

of limitations because Plaintiff's arrest, detention, interrogation, and confession all happened in 1994. *See* Defs.' Mem. at 7. Accordingly, Defendants argue that the limitations period on those claims began to run in 1994 and expired, at the latest, in 1997. *See id*.

Unlike the applicable *limitations period*, which is determined by state law for Section 1983 claims, the *accrual date* is determined by federal law. *Wallace*, 549 U.S. at 388. Under federal law, "[a] [S]ection 1983 claim accrues when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Earle*, 707 F.3d at 305 (citations omitted) (internal quotation marks omitted). Stated differently, under federal law, a claim accrues when "the factual and legal predicates for filing suit are in place." *Id.* at 306 (citations omitted) (internal quotation marks omitted).

But there are exceptions to that rule, and here, Plaintiff invokes one such exception—the "discovery rule." Pl.'s Mem. in Opp'n, ECF No. 14, at 6 [hereinafter "Pl.'s Mem."]. In *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 342 (D.C. Cir. 1991), the Court of Appeals held that "the discovery rule is the general accrual rule in federal courts," applicable to federal questions "in the absence of a contrary directive from Congress." *Id.* at 342 (citation omitted) (internal quotation marks omitted); *see also MCI Telecomm. Corp. v. FCC*, 59 F.3d 1407, 1416 (D.C. Cir. 1995) (discussing *Connors*' adoption of the discovery rule as a holding). Under the discovery rule, a claim for relief does not accrue "until the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action." *Connors*, 935 F.2d at 341 (citation omitted) (internal quotation marks omitted). At least as it relates to the discovery of injury, the rule operates as follows:

> [I]f the injury is such that it should reasonably be discovered at the time it occurs, then the plaintiff should be charged with discovery of the injury, and the limitations period should commence, at that time. But if, on the other hand, the injury is not of the sort that can readily be discovered when it occurs, then the action will accrue,

> and the limitations period commence, only when the plaintiff has discovered, or
> with due diligence should have discovered, the injury.

*Id*. at 342.  Defendants have not identified any congressional directive ordering the courts not to apply the discovery rule to Section 1983 cases; therefore, the court will apply it to the Section 1983 claims at issue here.

a.    <u>Count II:  Section 1983 claim based on false imprisonment</u>

Plaintiff's Section 1983 claim premised on her false imprisonment is barred because the statute of limitations for that claim began to run in 1994, when the Superior Court ordered her held without bond.  In *Wallace*, the Supreme Court determined that a plaintiff's Section 1983 claim based on unlawful arrest—a "species" of the tort of false imprisonment—accrued not at the time the unlawful arrest occurred, but rather, at the time the plaintiff became "detained pursuant to legal process."  549 U.S. at 388, 397.  In other words, the Section 1983 claim for unlawful arrest accrued "when [plaintiff] appeared before the examining magistrate and was bound over for trial." *Wallace*, 549 U.S. at 391.  Similarly, the Court observed, for the broader claim of false imprisonment, accrual begins "once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges."  *Id.* at 389 (citations omitted).[6]

In this case, Plaintiff's false imprisonment ended in 1994, at the latest, when a Superior Court judge ordered her held without bond until her trial.  At that point, the three-year statute of limitations began to run.  Her claim for false imprisonment under Section 1983, therefore, is barred by the statute of limitations.

---

[6] After the victim is held pursuant to process, the "entirely distinct" tort of malicious prosecution provides the remedy for a wrongful deprivation of liberty.  *Id.* at 390 (citation omitted) (internal quotation marks omitted).

b.      Count III:  Section 1983 claim based on coerced confession

Plaintiff's Section 1983 claim based on her allegation that Trainum coerced a false confession likewise is barred.  Plaintiff plainly was aware of Trainum's conduct that led to her false confession at the time it occurred.  Indeed, she concedes that she "knew that she had falsely confessed."  Pl.'s Mem. at 7.  She also was plainly aware of the resulting injury from that conduct—her arrest and pre-trial detention.  Thus, in 1994, Plaintiff was aware of all the requisite facts constituting a "complete and present cause of action."  *Earle*, 707 F.3d at 305 (citations omitted).

Plaintiff contends that, although "[s]he knew that she had falsely confessed, and had recanted that confession in 1994 . . . she was not aware that she had a viable claim" until 2013 when she was contacted by the producers of "This American Life." Pl.'s Mem.at 7-8.  But accrual does not commence, as Plaintiff seems to argue, when a person develops actual knowledge that federal or state law recognizes a claim that, if asserted, might remedy an injury.  Rather, accrual of a claim commences when a person learns the *facts* that constitute the claim, or could learn of them through reasonable diligence.  Thus, the fact that Plaintiff might not have gained actual knowledge that she had a "viable claim" until 2013 did not delay accrual of her claim or toll the limitations period from accruing.

Plaintiff also argues that her claim is not time barred because the "'discovery doctrine' standard does not turn on Plaintiff's mere knowledge of her injury, but rather, on that knowledge *and* the knowledge of the tortious conduct committed." Pl.'s Mem. at 7.  Plaintiff is correct insofar as she makes a general statement about the law—mere knowledge of an injury is not enough to start the running of a claim.  But here Plaintiff's Complaint clearly alleges that she knew not only about the injury, but also about the conduct that caused it—Trainum's coercive conduct that led

her to falsely confess.  Compl. ¶¶ 9, 14, 22 (alleging that her "lengthy, grueling, sleep-deprived" interrogation lasted 17 hours and that she later recanted her confession).

Accordingly, all three of Plaintiff's Section 1983 claims are dismissed.

### B.      State Law Claims Against the District of Columbia

Plaintiff's common law claims are time barred for the very same reasons as her Section 1983 claims:  she was aware in 1994 of the conduct and injury that gave rise to those claims, but did not file suit until almost two decades later.  Under District of Columbia law, a claim is deemed to have accrued "from the moment a party has either actual notice of her cause of action, or is deemed to be on inquiry notice by failing to act reasonably under the circumstances in investigating matters affecting her affairs, where such an investigation, if conducted, would have led to actual notice."  *Medhin v. Hailu*, 26 A.3d 307, 310 (D.C. 2011) (citation omitted) (internal quotation marks omitted).  If the relationship between the fact of injury and the conduct are obscure, accrual is governed by the "discovery rule" which provides that "the claim does not accrue until the claimant knows or by the exercise of reasonable diligence should know of (1) the injury, (2) its cause in fact, and (3) some evidence of wrongdoing."  *Id.* (citation omitted); *accord Bussineau v. President & Dirs. of Georgetown Coll.*, 518 A.2d 423, 425 (D.C. 1986).  Although a claim will not accrue until a plaintiff has "some evidence of wrongdoing," accrual is not delayed merely because the plaintiff does not "have knowledge of the precise breadth or nature of the tortious action."  *Brin v. S.E.W. Investors*, 902 A.2d 784, 792 (D.C. 2006) (citation omitted).  In fact, "[i]t is not necessary that all or even the greater part of the damages . . . occur before the [right] of action arises."  *Hendel v. World Plan Executive Council*, 705 A.2d 656, 661 (D.C. 1997) (citation omitted) (internal quotation marks omitted).  "Any appreciable and actual harm flowing from the [defendant's] conduct is sufficient."  *Id.* (citation omitted) (internal quotation marks omitted).

Applying these standards, Plaintiff's common law claims accrued in 1994.[7]  At that point, she had suffered an injury—she was detained for ten months on the basis of a coerced confession. And, she clearly had "some evidence" of the tortious acts that caused her injury.  She was aware that Trainum had subjected her to a grueling, 17-hour interrogation, during which she was deprived of sleep and subjected to other coercive interrogation tactics, which led her to confess to a crime she did not commit.  Notwithstanding her later recantation, Plaintiff was arrested, charged, and detained for a period of ten months pending trial, until the prosecution dismissed the charges for a lack of evidence.  These facts were sufficient to place Plaintiff on inquiry notice—certainly by no later than the date on which the charges were dismissed against her—that she had been injured by Trainum's tortious acts.  While Plaintiff may not have known until 2013 the full extent of Trainum's alleged tortious conduct—such as the fact that he had withheld exculpatory evidence and had failed to pursue leads that may have exonerated her—because she knew about the coerced confession, she was aware of "some evidence of wrongdoing" decades earlier.  Thus, the court concludes that Plaintiff's state law claims for malicious prosecution and intentional infliction of emotional distress are barred by the statute of limitations.[8]

---

[7] Or, at the latest, in early 1995.  The Complaint is unclear as to the date on which Plaintiff was released from confinement.

[8] Though it need not reach the issue, the court also concludes that Plaintiff's common law tort claims would be barred against the District of Columbia and Trainum in his official capacity because Plaintiff failed to give timely notice of those claims to the District under D.C. Code § 12-309.  *See Owens v. District of Columbia*, 993 A.2d 1085, 1088 (D.C. 2010) (stating that "written notice under § 12-309 is a condition precedent to filing suit against the District" and that "compliance with the statutory notice requirement is mandatory") (citations omitted) (internal quotation marks omitted); *see also Cox v. District of Columbia*, 91-cv-2004 (JHG), 1991 WL 258173 (D.D.C. Nov. 22, 1991) (dismissing all non-federal claims against the District and against the individual defendants sued in their official capacity for failure to comply with D.C. Code § 12-309).

V.      **CONCLUSION**

For the reasons stated above, the court grants Defendants' Motion to Dismiss.  A separate

Order dismissing this action accompanies this Memorandum.

Dated:  September 23, 2015

Amit P. Mehta
United States District Judge